IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :     CRIMINAL ACTION
                              :
          v.                  :
                              :
JESUS M. BELTRAN-DELRIO       :     NO. 08-55-2

MEMORANDUM AND ORDER

McLaughlin, J.                              March 18, 2009

          Jesus M. Beltran-Delrio has been charged, along with
two others, Gerardo Sandoval and Camilo Rodriguez, with
conspiracy to possess marijuana with intent to distribute and
possession of marijuana with intent to distribute.  Beltran-
Delrio has filed a motion to suppress physical evidence.  The
Court held an evidentiary hearing on January 23, 2009, and will
now deny the motion.

I.   Findings of Fact

          Police Officer Darren Graboskie works for the City of
Reading, Berks County, Pennsylvania, in the vice and narcotics
unit.  He received information on January 5 or 6, 2008, from a
confidential informant that Gerardo Sandoval and Rafael Jimenez
were going to be getting a shipment of marijuana.  The police
established surveillance of Jimenez.  Officer Graboskie was
familiar with the names "Jimenez" and "Gerardo Sandoval" in the
context of previous drug related investigations.

On January 7, the police established surveillance on Jimenez' house at 822 Greenwood Street in Reading.  They initially observed Jimenez go to a silver Audi and drive around the city.  He eventually went back to his residence and the police maintained surveillance on the house.  Later that day a black Audi that was registered to Camilo Rodriguez and was being driven by Gerardo Sandoval showed up at 822 Greenwood Street.

Jimenez came out of the house and got into the passenger side of the black Audi.  The police continued to do surveillance of the vehicle.  Eventually Jimenez and his passenger went into West Reading and picked up a third individual who was never identified.  The police surveilled them to Givler's Auto which is in Leesport, Pennsylvania.  Givler's sells enclosed trailers.  Officer Graboskie saw the three individuals looking at different trailers.  They then got back into the Audi and left.

The police maintained surveillance on the black Audi as it went to various businesses and circled around parking lots. The police terminated the surveillance because they thought the Audi's conduct was strange and they did not want the people inside the vehicle to realize that the police were surveilling them.  Agents went back to 822 Greenwood Street and set up surveillance on the house.  When the agents arrived, the black Audi was already parked there.  They maintained surveillance on the residence and the vehicle.

Sandoval was observed by the police getting back into the Audi and they surveilled him to 1402 Mt. Laurel in Temple, Pennsylvania. Officer Graboskie saw Sandoval get out of the vehicle and walk to the back of the vehicle where there was a silver or grey van parked in the back of the residence. Sandoval retrieved an unknown item from the van and put it into the trunk of the Audi. This happened around 4:30 in the afternoon. The police stayed on the surveillance on 1402 Mt. Laurel but the only other activity they observed was a blue dodge pickup truck pull in that was registered to Jesus Beltran-Delrio. Jesus Beltran-Delrio and Gerardo Sandoval live at the 1402 Mt. Laurel residence.

Some agents went into Givler's and asked about the three individuals in the Audi. They were told that the three individuals were looking to purchase a trailer. The agents left word with the people at Givler's to contact the DEA if any of those three people returned.

On January 8 at approximately 4:00 p.m., the police resumed surveillance at Givler's auto. They had information from the manager of Givler's that Sandoval was going to purchase a trailer. The police observed a white Ford Explorer SUV leaving Givler's towing a brand new trailer so they followed the vehicle to 1402 Mt. Laurel Avenue in Temple. It backed into the driveway and the vehicle was unhooked. Officer Graboskie saw Sandoval in

the driveway near the trailer.  The information they had at that point was that the purchaser of the vehicle was Sandoval.

The Ford Explorer that was towing the trailer left the area.  The trailer and Sandoval were still there.  Later on, the police saw a blue Dodge pickup truck that they had seen on numerous occasions that is registered to Beltran-Delrio pull into the driveway.  Sandoval hooked the trailer up to the pickup truck.  The police could not determine the driver of the pickup truck.  They observed a Humvee parked in the driveway with several other cars.  The Humvee at one point repositioned itself in the driveway.  The van that the police had seen on the previous day that was parked around back, pulled into the driveway and both the van and the truck that now had the trailer attached to it left the residence.  The police saw no loading of the trailer during their surveillance.  Officer Graboskie did not see who was driving the van or the truck.  The van was leading.

The police had constant surveillance on the trailer from the time it left Givler's until the time that it left 1402 Mt. Laurel Road.  The trailer traveled up Mt. Laurel Avenue and ended up at Giorgio's Mushroom Farm – about five miles away –  at around 7:00 p.m.

When the truck and the van reached the mushroom farm, the two vehicles went up Blandonfleetwood Road.  That road veers off to the right which is West Wesner Road and the van and the

4

truck went on West Wesner Road.  Some of the agents got caught at a traffic light so there was only one person, Agent Matsko, following the truck and van at that time.  The van and the truck went around the back of the mushroom farm.

The police officers lost sight of the truck and the van around 7:40 p.m.  There were four police officers in three vehicles.  Task Force Officer Faffuamalie positioned himself off of the dirt road to maintain surveillance on the entrance and the exit.  The other officers were in communication with him.  They did not notice any other traffic in the particular area.

About 10 minutes later, Officer Faffuamalie radioed and stated that he saw a vehicle's tail lights pulling into the area where the other two vehicles were but he could not make out what kind of car it was.  About five minutes later, the vehicle came out and he identified the vehicle as a silver Audi and was able to get the license plate.  It was the same silver Audi that the police were following on January 7.  The Audi circled Officer Faffuamalie's vehicle about five times.  The police considered this counter-surveillance.  In view of the Audi encircling Officer Faffuamalie's vehicle, the police sent another vehicle up to Officer Faffuamalie because they were not sure why they were circling his car.  The car that was sent contained 4 Reading Vice personnel in it.  As soon as the vehicle reached Officer Faffuamalie's car, the Audi left the area.  The police sat for

about 20 minutes at the Y near the farm waiting for the truck or van to reappear.

The police had no idea how many entrances or exists there were at the mushroom farm.  It was dark and they could not see, so they decided to go into the back of the mushroom farm to investigate further.  There were no fences or barricades or anything obstructing the police from entering the mushroom farm. The police did not observe any residential property on the area. There were only mushroom farm buildings.  About half way up West Wesner Road, they saw the silver Audi coming down the road.  The police had the Audi stopped by a marked Northern Berks Police unit.  The police proceeded to the back of the mushroom farm.

Several police vehicles entered the mushroom farm. Some went around to the right and some to the left.  Officer Graboskie went around to the left.  He was not at all familiar with the mushroom farm.  He had never been there before.  He had never seen a map of it.  He had no idea about the roads in and out of the farm.  When Officer Graboskie got to the rear of the farm, he observed the blue pickup truck with the trailer attached.  The van was about ten feet behind the truck.

The truck was facing him as he came into the back of the area.  As soon as he saw the truck, he turned on his high beams so that he could illuminate the area because it was pitch dark.  He saw Beltran-Delrio in the driver's seat of the truck.

The van was also facing him.  He did not see any occupants in the van.  Camilo Rodriguez initially was behind the driver's seat of the van.  As officers approached the van from the other side, Rodriguez got out of the van and started walking away.

As soon as Officer Graboskie stepped out of his car, there was a strong odor of marijuana in the air.  He stopped the individuals to investigate further.  Other agents and officers could see bales which were consistent with bales of marijuana through the multiple windows in the van.  Officer Graboskie also saw the bales.  It was an open bed truck.  There was no marijuana in the back of the truck.  After observing the marijuana in the back of the van, they placed Beltran-Delrio and Rodriguez into custody.

The police opened the trailer for officers' safety to be sure there was no one hiding inside.  At that time, they saw other bales of marijuana in there but no people so they closed the door.  They obtained a search warrant to search both vehicles.  Officer Graboskie learned from the officers who stopped the Audi that Jimenez and Sandoval were in the Audi. Jimenez was driving and Sandoval was the passenger.  Sandoval and Jimenez were detained that night but were then released. Rodriguez and Beltran-Delrio were arrested.

Officer Graboskie obtained a third search warrant for the building that was directly next to where the vehicles were

parked.  He learned from Tom Versagli, Vice President of the
mushroom farm, that both Beltran-Delrio and Rodriguez were
employees of the mushroom farm.

II.  Discussion

        The defendant argues that the physical evidence
discovered at the mushroom farm should be suppressed because the
police violated the Fourth Amendment when they pulled in front of
the truck and, in effect, stopped the vehicles from leaving.

        Assuming that the police did "stop" the defendant when
they pulled in front of the truck, there was reasonable suspicion
to do so.  The police had received information from a reliable
informant that the two co-defendants, Gerardo Sandoval and Camilo
Rodriguez, were going to receive a shipment of marijuana.  The
police then conducted surveillance that did not trigger the
Fourth Amendment, and that confirmed the informant's information.
They observed all three defendants engaging in activities that
were consistent with preparing to receive a shipment of
marijuana.

        Once Officer Graboskie got out of his car, he smelled
marijuana and the other police officers who came from the other
side saw what looked like bales of marijuana through the windows
in the van.  The police then had probable cause to arrest the

defendant and to get search warrants to search the vehicles.  The motion is denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      CRIMINAL ACTION
                              :
           v.                 :
                              :
GERARDO SANDOVAL              :
JESUS M. BELTRAN-DELRIO       :
CAMILO RODRIGUEZ              :      NO. 08-55

ORDER

AND NOW, this 18th day of March, 2009, upon consideration of the Motion to Suppress Physical Evidence of defendant Jesus M. Beltran-Delrio (Docket No. 41), the government's opposition, and after a hearing on January 23, 2009, and for the reasons stated in the accompanying memorandum of law, IT IS HEREBY ORDERED that said motion is DENIED.

BY THE COURT:


/s/ Mary A. McLaughlin__
MARY A. McLAUGHLIN, J.